IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HEATHER KAMPANS, | ) |
| Plaintiff, | ) |
| v. | ) |
| ADVANCED SPINE AND PAIN, PLLC, | ) Case No. 1:19-cv-86 |
| and | ) |
| AURICA IONITA, | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, Heather Kampans ("Plaintiff" or "Mrs. Kampans"), by counsel, hereby alleges the following causes of action:

**INTRODUCTION**

1. Plaintiff brings a cause of action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Defendant, Advanced Spine and Pain, PLLC ("ASAP"), arising from its unlawful termination of Plaintiff's employment in retaliation for investigating and collecting information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

2. In addition, Plaintiff brings a cause of action for wrongful termination against ASAP and Aurica Ionita ("Ms. Ionita") (collectively, "Defendants") in violation of the public policy of treating crime witnesses with dignity, respect, and sensitivity, and protecting them from harm and threats of harm arising out of their cooperation with law-enforcement.

## PARTIES

3. Plaintiff, Heather Kampans, is a natural person and a citizen of the Commonwealth of Virginia, residing in Stafford County, Virginia.

4. Defendant, Advanced Spine and Pain, PLLC, is a Virginia professional limited liability corporation with its principal office located in Stafford County, Virginia. ASAP diagnoses and treats spinal conditions. Thomas J. Raley, M.D. ("Dr. Raley") founded ASAP in 2010.

5. Defendant, Aurica "Aura" Ionita, is a natural person and a citizen of the Commonwealth of Virginia, residing in Montgomery County, Maryland. At all relevant times, Ms. Ionita was the Practice Administrator of ASAP and the immediate supervisor of Mrs. Kampans.

## JURISDICTION & VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Count I arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, a law of the United States.

7. This Court has supplemental jurisdiction over the subject matter of Plaintiff's state law claim for wrongful termination against Defendants under Count II pursuant to 28 U.S.C. § 1367(a) because these claims are related to and arise from the same case or controversy as Plaintiff's claim under Count I.

8. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's claims occurred in Stafford County, Virginia, which is a territory included within those assigned to the Alexandria Division of the Eastern District of Virginia.

**FACTUAL BACKGROUND**

9. At all relevant times, ASAP employed Mrs. Kampans as a Human Resources Manager.

10. At all relevant times, Mrs. Kampans was a devoted and exceptional employee of ASAP.

11. On or about August 16, 2018, Laura Smith ("Ms. Smith"), Scheduling Coordinator for ASAP, advised Mrs. Kampans that Dr. Raley required Mrs. Smith to order Durable Medical Equipment ("DME") on Amazon and then he billed clients, including clients with Medicare, using more expensive billing codes. When Ms. Smith advised Dr. Raley such practice was unlawful, he ordered her to do it anyway.

12. On or about August 22, 2018, Mrs. Kampans called Dr. Raley and Ms. Ionita. During the call, Mrs. Kampans advised Ms. Smith was reporting illegal activity and wanted to contact Medicare. Dr. Raley denied any illegal activity. Dr. Raley and Ms. Ionita thanked Mrs. Kampans and requested her to continue gathering information regarding Ms. Smith's allegations.

13. Later that day, Ms. Smith told Mrs. Kampans that she was speaking with a friend who works for the Integrity Program for Medicare and/or Medicaid in Richmond, Virginia, advising whether ASAP's billing practices are illegal.

14. Thereafter, Mrs. Kampans advised Dr. Raley by text message that Ms. Smith contacted a member of the Integrity Program. Dr. Raley responded, in part, "if u can prove she sent pt info to someone outside the practice I can fire her. Otherwise legally I can not."

15. On September 10, 2018, Mrs. Kampans met with Ms. Ionita, with Keith Filmore ("Mr. Filmore"), Call Center Supervisor, present. Ms. Ionita advised Mrs. Kampans that Ms. Smith claimed Mrs. Kampans was solely responsible for investigating illegal billing practices of

ASAP. In addition, Ms. Ionita stated she believed Ms. Smith. Mr. Filmore stated Ms. Smith previously mentioned the illegal billing practices of ASAP to him on a separate occasion.

16. Later that day, Mrs. Kampans confronted Ms. Smith, with both Ms. Ionita and Mr. Filmore present, and Ms. Smith resigned.

17. On information and belief, Ms. Ionita believed Mrs. Kampans was investigating and collecting information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

18. After September 10, 2018, Ms. Ionita began a pattern of retaliation against Mrs. Kampans.

19. On September 20, 2018, Ms. Ionita advised Mrs. Kampans she would be moved to a storage closet used as a temporary office to which Mrs. Kampans protested.

20. Later that day, Ms. Ionita spoke with Mr. Filmore. During their conversation, Ms. Ionita told Mr. Filmore not to talk with Mrs. Kampans, and further implied if Mrs. Kampans did not take the office, she would be fired. In addition, Ms. Ionita criticized Mr. Filmore's job performance. When Mr. Filmore told Ms. Ionita he felt he was under constant attack and always defending himself, Ms. Ionita said, "that's the same thing [Mrs. Kampans] said and I'm telling you don't use those words. I am warning you as a friend and not your boss to use your time wisely if you know what I mean" or words to that effect.

21. Ms. Ionita's words threatened and/or implied Mr. Filmore and Mrs. Kampans should not use their time to investigate and collect information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

22. Mr. Filmore advised Mrs. Kampans of his conversation with Ms. Ionita.

23. On September 24, 2018, Ms. Ionita demoted Mrs. Kampans from Human Resources Manager to HR/Patient Accounts, and stripped Mrs. Kampans of job duties, including, but not limited to, hiring authority for ASAP. In addition, Ms. Ionita advised Mrs. Kampans she would now be reasonable for making sure all patient accounts are correct, which is a job for an entire billing department and Mrs. Kampans has no certification for billing and coding. Further, Ms. Ionita forced Mrs. Kampans to move her office to the storage closet.

24. At this time, Mrs. Kampans further investigated the billing practices of ASAP. Based on her investigation, she discovered, in part:

    a. ASAP routinely billed patients, including those with Medicare, for one-hour office visits when Dr. Raley saw such patients for less than thirty (30) minutes.

    b. ASAP, by direction of Dr. Raley, entered false information to Medicare's quality reporting program (Physician Quality Reporting System, now Merit-Based Incentive Payment System) to avoid penalties and reduced reimbursement on claims.

    c. In several instances, ASAP exceeded the maximum fee schedule for Medicare.

    d. In several instances, ASAP billed patients under Medicare using codes for higher payouts.

    e. In several instances, ASAP used provider licenses with Medicare credentials after such providers left employment with ASAP.

25. While moving offices, Mrs. Kampans injured her back, forcing her to visit her physician. Mrs. Kampans' physician provided her with a return to work date of Friday, September 28, 2018. Mrs. Kampans was scheduled off that day for a wedding and returned to work the next Monday, October 1, 2018.

26. On October 2, 2018, Ms. Ionita terminated the employment of Mr. Filmore. When Ms. Ionita terminated his employment, she forcibly grabbed and restrained Mr. Filmore by the arm. During this encounter, Mr. Filmore took pictures of Ms. Ionita grabbing his arm, and he showed these pictures to Mrs. Kampans.

27. Following the encounter, Mr. Filmore contacted the police. When the police officer arrived, Mrs. Kampans met with the police officer as the Human Resources representative.

28. Later that day, Ms. Ionita met with Mrs. Kampans. Ms. Ionita claimed Mrs. Kampans "took sides with someone I just fired without having any proof what happened in that room. You took his side. You defended him every second." Mrs. Ionita proceeded to suspend Mrs. Kampans "for at least three days."

29. On October 8, 2018, Mrs. Kampans returned to work following her suspension. Shortly after Mrs. Kampans arrived, Ms. Ionita terminated her employment. During the meeting, Ms. Ionita said, in part, "we had a lot of thinking, going over the past months, and everything that has happened . . . this is not a retaliation, not. This is a decision that needs to be made. Something happened with you, and its not only your performance and errors. We never understood what happened and what was your closeness with [Mr. Filmore]. We never understood that. You undermined me a few times. . . . I thought you were on my team. . . . Something happened to you and you did some things wrong. Taking sides with someone who I just fired who tried to blame me for something I didn't do. You believed him instead of trusting and believing me. Because he was fired but you're still here, you still work for this practice. . . . The environment that you created lately was not a good one."

30. On information and belief, Ms. Ionita terminated the employment of Mrs. Kampans because she suspected Mrs. Kampans was investigating and collecting information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

31. In the alternative, Ms. Ionita terminated the employment of Mrs. Kampans because Mrs. Kampans cooperated with a law-enforcement investigation into the criminal allegations brought by Mr. Filmore against Ms. Ionita.

## STATEMENT OF CLAIMS

### COUNT I:

**RETALIATION (31 U.S.C. § 3730(h))**
**AGAINST ASAP**

32. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

33. Plaintiff engaged in protected activity in furtherance of a FCA action by investigating and collecting information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

34. On or about August 22, 2018, Plaintiff advised Dr. Raley and Ms. Ionita of illegal billing practices of ASAP brought to her attention by Ms. Smith.

35. On September 10, 2018, Ms. Smith told Ms. Ionita that Plaintiff was solely responsible for investigating illegal billing practices of ASAP.

36. On information and belief, Ms. Ionita believed Plaintiff was investigating and collecting information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

37. Following that date, Ms. Ionita began a pattern of retaliation against Plaintiff, including, but not limited to, forcing Plaintiff to move her office to a storage closet, demoting

Plaintiff from Human Resources Manager to HR/Patient Accounts, stripping Plaintiff of job duties, and ultimately terminating the employment of Plaintiff.

38. All these actions occurred within one month of the date Ms. Smith accused Plaintiff of investigating and collecting information about possible false or fraudulent claims made by ASAP to Medicare and/or Medicaid.

39. Plaintiff further investigated the billing practices of ASAP. Based on her investigation, she discovered, in part:

    a. ASAP routinely billed patients, including those with Medicare, for one-hour office visits when Dr. Raley saw such patients for less than thirty (30) minutes.

    b. ASAP, by direction of Dr. Raley, entered false information to Medicare's quality reporting program (Physician Quality Reporting System, now Merit-Based Incentive Payment System) to avoid penalties and reduced reimbursement on claims.

    c. In several instances, ASAP exceeded the maximum fee schedule for Medicare.

    d. In several instances, ASAP billed patients under Medicare using codes for higher payouts.

    e. In several instances, ASAP used provider licenses with Medicare credentials after such providers left employment with ASAP.

40. On information and belief, ASAP, by and through Dr. Raley and/or Ms. Ionita, knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, and/or made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

41. On information and belief, ASAP, by and through Dr. Raley and/or Ms. Ionita, had actual knowledge of this information, acted in deliberate ignorance of the truth or falsity of this information, or acted in reckless disregard of the truth or falsity of this information.

42. ASAP, by and through Dr. Raley and/or Ms. Ionita, demoted and discharged Plaintiff because of lawful acts done by Plaintiff to stop one or more violations of FCA.

43. Due to the actions of ASAP, by and through Dr. Raley and/or Ms. Ionita, Plaintiff suffered lost wages and benefits, and attorneys' fees and costs.

## COUNT II:

### WRONGFUL TERMINATION AGAINST PUBLIC POLICY
### AGAINST DEFENDANTS

44. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

45. Section 19.2-11.01(A) of the Code of Virginia establishes a public policy of treating crime witnesses with dignity, respect, and sensitivity, and protecting them from harm and threats of harm arising out of their cooperation with law-enforcement, including harm from employers.

46. Section 18.2-460(B) of the Code of Virginia provides any person who by threats knowingly attempts to intimidate or impede a witness is guilty of a Class 1 misdemeanor.

47. As such, it is a public policy explicitly expressed in § 19.2-11.01(A) and § 18.2-460(B) to protect witnesses of crime from intimidation and retaliation by employers.

48. As a witness to the unlawful assault and battery of Mr. Filmore, Plaintiff was clearly a member of the class of persons directly entitled to protection enunciated by this public policy.

49. In addition, Section 18.2-460(D) of the Code of Virginia provides any person who knowingly and willingly makes any materially false statement or representation to a law-enforcement officer who is in the course of conducting an investigation of a crime by another is guilty of a Class 1 misdemeanor.

50. Ms. Ionita terminated the employment of Plaintiff because she cooperated with, and otherwise refused to support Ms. Ionita by making materially false statements or representations to, law-enforcement officers in the course of conducting an investigation into the criminal allegations of Mr. Filmore.

51. Due to the actions of ASAP and Ms. Ionita, Plaintiff suffered lost wages and benefits, mental and emotional distress, anxiety, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, inconvenience, and stress.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in here favor and against Defendants, Advanced Spine and Pain, LLC and Aurica Ionita, in whole or in part;

B. Declare the acts and practices complained of herein are in violation of her rights as secured by the False Claims Act, 31 U.S.C. § 3729 *et seq.*;

C. Enjoin Defendants from engaging in such unlawful employment practice;

D. Order such affirmative action as may be appropriate, including, but not limited to, awarding Plaintiff front pay;

E. Award Plaintiff money damages for all pecuniary losses, including, but not limited to, two times back pay, interest on back pay, and benefits;

F. Award Plaintiff money damages for Plaintiff's mental and/or emotional distress, inconvenience, and humiliation and embarrassment;

G. Award Plaintiff punitive damages;

H. Award Plaintiff her litigation costs and reasonable attorneys' fees pursuant to 31 U.S.C. § 3730(h)(2);

I. Award Plaintiff a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back or front pay;

J. Award Plaintiff pre- and post-judgment interest on any monetary award; and

  K. Award Plaintiff any and all other relief the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

       Respectfully submitted,

       **HEATHER KAMPANS**
       *Plaintiff*

By: _____/s/_____
       James B. Thorsen, Esq.
       VSB No. 18113
       Jesse A. Roche, Esq.
       VSB No. 82579
       Attorneys for Heather Kampans
       THORSENALLEN LLP
       5413 Patterson Avenue, Suite 201
       P. O. Box 17094
       Richmond, Virginia 23226
       Telephone: (804) 447-7234
       Facsimile: (804) 447-7813
       E-mail: jthorsen@thorsenallen.com
       E-mail: jroche@thorsenallen.com